**SHIELD LAW, LLC**
Nicola S. Yousif (BBO #679545)
nick@shieldlaw.com
Matthew McKenna (BBO #705644)
matt@shieldlaw.com
157 Belmont St.
Brockton, MA 02301
Telephone: (508) 588-7300

*Attorneys for Plaintiff*
Jean-Baptiste Boyer-Gomez

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEAN-BAPTISTE BOYER-GOMEZ, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br>    **(1) THE MASSACHUSETTS CONSUMER PROTECTION ACT G.L. C. 93A §§ 2, 9.**<br>    **(2) BREACH OF CONTRACT**<br>    **(3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>    **(4) UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.  Jean-Baptiste Boyer-Gomez ("Plaintiff"), by Plaintiff's attorneys, brings this Class Action to challenge the deceptive business practices of Bank of America, N.A. ("Defendant") related to its advertised and agreed upon terms and conditions.

2.  Plaintiff saw, relied upon, and entered into a binding agreement with Defendant pursuant to its Bonus Miles and XP Offer (the "Offer"). Upon Plaintiff's completion of his end of the Offer, Defendant applied a different offer and refused to abide by the original terms.

3.  Defendant, while on the phone with Plaintiff, informed Plaintiff that numerous other individuals

had spoken to them about this bait-and-switch. Nevertheless, Defendant refused to honor the original agreement.

4.  Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5.  While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6.  Unless otherwise stated, all the conduct engaged in by Defendant took place in Massachusetts.

7.  Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8.  Unless otherwise indicated, the use of a Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## JURISDICTION AND VENUE

9.  Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks class wide damages which, when aggregated, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

10.  Jurisdiction of this Court arises pursuant to specific jurisdiction.

11.  Because Defendants regularly conduct business within the State of Massachusetts, personal jurisdiction is established.

12.  Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because (a) the conduct giving rise to Plaintiff's injury originated from or occurred in Massachusetts; (b) Plaintiff resides in this judicial district; and (c) Defendant conducted business within this judicial district at all relevant times.

## PARTIES

13.  Plaintiff is a natural person who resides in Somerville, Massachusetts.

14.  Defendant Bank of America is a national banking association doing business in the State of

Massachusetts with a principal place of business in North Carolina.

**FACTUAL ALLEGATIONS**

15. At all times relevant, Plaintiff is an individual residing within the State of Massachusetts.

16. Plaintiff is informed and believes, and thereon allege, that at all times relevant, Defendant conducted and continues to conduct business in the State of Massachusetts.

17. On May 9, 2024, the Consumer Financial Protection Bureau ("CFPB") filed a report highlighting "consumer frustrations with Credit Card Rewards Programs."[1] The report noted that "[i]n 2023, the CFPB received over 1,200 complaints involving credit card rewards" some of which "reflect perennial issues involving the administration of credit card rewards, such as consumers claiming credit card companies denied them benefits after they met program requirements."[2] The issue spotlight "analyzed several hundred consumer complaints relating to the administration of credit card rewards programs and identified four recurring themes" of which the first is relevant here: "(1) Consumers fail to receive promotional rewards when financial institutions impose vague or hidden conditions: Consumers indicate that requirements detailed in the fine print of rewards programs' terms and conditions do not match marketing materials, turning sign-up offers or other promotional rewards into a 'bait and switch.'"[3]

18. The CFPB noted that it has taken previous action against Defendant for "unfair, deceptive, or abusive acts or practices related to rewards."[4]

19. With respect to these bait-and-switch tactics, "[c]onsumers described applying for a card based on a more rewarding offer but later receiv[ed] an inferior promotion."[5] In fact, "[t]he CFPB found in an enforcement action that one issuer, Bank of America, violated the law when it offered sign-up bonuses only through online applications without clearly disclosing this

---

[1] Consumer Financial Protection Bureau, *Credit Card Rewards Issue Spotlight* (May 9, 2024), https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-credit-card-rewards/
[2] *Id*. at 2.
[3] *Id*.
[4] *Id*. at 3; *See also* fn. 4 (citing CFPB, *CFPB Takes Action Against Bank of America for Illegally Charging Junk Fees, Withholding Credit Card Rewards, and Opening Fake Accounts* (July 11, 2023), https://www.consumerfinance.gov/about-us/newsroom/bank-of-america-for-illegally-charging-junk-fees-withholding-credit-card-rewards-opening-fake-accounts/)
[5] *Id*. at 12.

limitation in marketing materials."[6]

20. In April 2024, Plaintiff signed a contract with Defendant for an Air France KLM World Elite Mastercard.

21. Plaintiff signed this contract because he received an advertisement which provided a limited time offer:

> **Earn 70,000 Bonus Miles plus 40 XP (Experience Points)** after you make $3,000 or more in purchase within the first 90 days of your account opening. **Plus, get 60 XP** upon approval!

22. Relying on this advertisement, Plaintiff applied for the card. Defendant reiterated the offer via advertisement on the front of the application:



Air France KLM World Elite Mastercard®

**Limited-Time online offer: Earn 70,000 Bonus Miles + 40 XP (Experience Points)!**
After making $3,000 or more in purchases within the first 90 days of your account opening.

**Plus, get 60 XP** upon approval!

**Low annual fee of $89†**

Apply Below

23. Plaintiff reviewed the terms and conditions for the card.[7] The "FEATURES" section details the same offer as had been on the advertisements:

> **Bonus Miles and XP Offer.** Receive 60 XP upon account opening. Limit one opening of account XP bonus offer per Flying Blue member. You will qualify for 70,000 bonus miles and an additional 40 XP if you use your new credit card account to make any combination of purchase transactions totaling at least $3,000 (excluding any fees, such as the annual fee) that post to your account without 90 days of the account open date.

24. Once Plaintiff finalized the application, Defendant sent him an email reiterating the advertised terms for the card as follows:

---

[6] *Id.*
[7] *See* Exhibit A

1
2
3
4
5
6
7
8
9

**Offer received : Air France KLM...**          **Done**

Limited-Time online offer: Earn 70,000 Bonus Miles plus 40 XP (Experience
Points) after you make $3,000 or more in purchases within the first 90 days of
your account opening. **Plus, get 60 XP upon approval!**

**Card Benefits Include:**

• Earn 3 Miles per $1 spent directly on Air France, KLM Royal Dutch Airlines and
  SkyTeam member airlines purchases
• Earn 1.5 Miles per $1 spent on all other purchases
• Receive 5,000 Miles every year on your account anniversary after you spend $50 or
  more on purchases within the anniversary year
• Redeem Miles toward flights with any SkyTeam member airline to over 1,000
  destinations worldwide
• No foreign transaction fees*
• Low annual fee of $89*

10   25.   After receiving the card, Plaintiff began to use the card to receive the advertised and
11         contractually guaranteed Bonus Miles and XP Offer.
12   26.   Unfortunately, Plaintiff's wallet disappeared after a month, and he requested a replacement card
13         from Defendant. When Defendant provided the new card, it also provided a set of documents
14         with the card. One of the documents detailed the same Bonus Miles and XP Offer as in the
15         original contract; however, a second document—which appeared as a separate and distinct
16         advertisement—offered a new plan:



Activate your Air France KLM
World Elite Mastercard® today.
Call 800.276.9939

**Your 50,000 Bonus Miles
and 60 XP offer is waiting**

Earn 50,000 **Bonus Miles** after you make $2,000
or more in purchases within the first 90 days of your
account opening. Get 60 XP (Experience Points)
upon approval of the Air France KLM World Elite
Mastercard®.*

27   27.   As stated, the plan offered "50,000 Bonus Miles after you make $2,000 or more in purchase

within the first 90 days of your account opening." Whereas the prior offer included 70,000 points with 100 XP, this new advertisement only provided 50,000 points with 60 XP.

28. Plaintiff, who had already contracted pursuant to the original offer and saw the original offer on the new set of documents, reasonably concluded that his original contract applied. Indeed, there was no reason why it would not. Thus, Plaintiff continued making transactions with the Card.

29. Over the course of ninety (90) days, Plaintiff spent $6,972.26 on the Card, well over the $3,000 required to claim the offered Bonus Miles and XP.

30. Nevertheless, Plaintiff did not receive the original offer; rather, Defendant unlawfully superseded Plaintiff's original contract and applied the Bonus Miles and XP terms related to the second advertisement—a monetary difference valued at $200 or greater.

31. When Defendant informed Plaintiff that he would not receive his expected Bonus Miles and XP terms, Plaintiff felt extremely frustrated and upset.

32. Plaintiff spoke with at least one of Defendant's representatives who informed him that Defendant had received numerous complaints related to its bait-and-switch of this advertised offer.

33. Plaintiff spent numerous hours attempting to investigate and rectify the situation. Ultimately, Defendant refused to honor its previous, contractually obligated and advertised terms and conditions.

34. On October 28, 2024, Plaintiff mailed Defendant a letter via certified mail, pursuant to the Massachusetts Consumer Protection Act 93A, § 9(3), outlining the legal and factual allegations described herein. Among other things, the letter requested Defendant "refrain from contacting Mr. Boyer-Gomez directly" and instead "direct any and all communications to [his attorneys]."

35. In a letter dated November 14, 2024, Defendant sent Plaintiff a letter directly, explaining that it "carefully reviewed [Plaintiff's] correspondence" and responded in kind:

> According to our research, the account was opened with 2 promotional bonus offers attached. You met the spending criteria of $2,000 within the first 90 days and received 40,000 in bonus points and 10,000 in bonus points. The total of 50,000 in bonus points were received in April 30, 2024, and the points were transferred to Air France account at the end of the billing cycle.
>
> Based on our review, we have not identified a bank error in the handling of your

credit card account. Please note that it is the customer's responsibility to review and understand the terms of the offer before applying for a credit card. We have confirmed that no bank error occurred regarding the offer.

36.  In this response, Defendant essentially admitted to the bait-and-switch. The promotion the parties agreed to was 70,000 bonus miles plus 40 XP after making $3,000 or more within the first 90 days (plus 60 XP upon approval). However, Defendant's letter states that it unilaterally applied a second promotional offer that granted 50,000 bonus miles and 60 XP after making $2,000 or more in purchases within the first 90 days.

37.  In summary, Defendant lured Plaintiff into a contract under specific terms, only to unilaterally change the terms after Plaintiff had already started performance and without any justifiable reason. Defendant did not provide adequate notice of any change, and the contracts Plaintiff received each had the original terms.

38.  Defendant's bait-and-switch tactics harmed Plaintiff. Not only did Plaintiff financially suffer, but Defendant's actions caused Plaintiff frustration, annoyance, time lost investigating, and lost opportunity to use a different credit card.

39.  Plaintiff has provided a redacted copy of the credit card application as Exhibit A. In contrast to Defendant's November 14, 2024, allegation, the application provides the original terms described in paragraphs 21-23 of this complaint.

40.  During the course of Plaintiff's communications with Defendant, he requested, multiple times, that Defendant provide him with a copy of his application and contract. Defendant repeatedly refused to provide these documents without explanation. Plaintiff also made a request through the Consumer Financial Protection Bureau to have Defendant provide these documents.

## CAUSE OF ACTION CLAIMED BY PLAINTIFF

### COUNT I

### VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT

### G.L. C. 93A, §§ 2, 9.

41.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

42.  The foregoing acts and omissions constitute violations of the Massachusetts Consumer Protection Act ("the Act"). Specifically, Defendant's conduct violated M.G.L. c. 93A § 2.

43. The Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. c. 93A § 2(a).

44. For actions brought under section nine, "[i]t is the intent of the legislature that…courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." M.G.L. c. 93A 2(b).

45. Under 93A § 9, the Act provides a private right of action.

46. The legislature enacted the Act to regulate business activities with the view to provide proper disclosure of information and a more equitable balance in relationships between consumers and individuals conducting business activities.[8] In fact, its purpose is to improve commercial relationships between consumers and businesspersons and to encourage more equitable behavior in the marketplace.[9] As such, the Act recognizes a general duty of good faith and fair dealing in business transactions.[10]

47. As a result of each and every violation of the Act, Plaintiff is entitled to any actual damages, treble damages, and injunctive relief pursuant to M.G.L. c. 93A, § 9(3); and reasonable attorneys' fees and costs pursuant to M.G.L. c. 93A, § 9(4).

## COUNT II

### BREACH OF CONTRACT

48. Plaintiff incorporates paragraphs 1-39 of this Complaint as though fully stated herein.

49. The foregoing acts constitute a breach of Plaintiff's contract with Defendant.

50. Breach of contract requires that "(1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result."[11]

51. As a result of the breach of contract, Plaintiff is entitled to actual damages and/or restitution.

## COUNT III

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

52. Plaintiff incorporates paragraphs 1-39 of this Complaint as though fully stated herein.

---

[8] *Commonwealth v. De Cotis*, 366 Mass. 234, 316 (1974); *See also Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621 (1978).
[9] *Poznik v. Massachusetts Medical Professional Ins. Ass'n.*, 417 Mass. 48 (1994).
[10] *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284 (1980); *See also Tufankjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173, 178-79 (2003).
[11] *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 162 (D. Mass. 2024)

COMPLAINT

53. The foregoing acts constitute a breach of the implied covenant of good faith and fair dealing.

54. In Massachusetts, "every contract…is subject to an implied covenant of good faith and fair dealing."[12] Breach of this implied covenant "occurs when one party violates the reasonable expectations of the other."[13] Thus, a party violates the covenant based on "the party's manner of performance…There is no requirement that bad faith be shown…The lack of good faith can be inferred from the totality of the circumstances."[14]

55. When Plaintiff applied for the Card and subsequently signed the agreement, he did so based on expectations laid out in both the advertisement and the subsequent terms and conditions. Likewise, Defendant used this offer to entice prospective consumers into applying for the card. Nevertheless, Defendant, prior to the 90-day reward period, switched the terms of the agreement without proper notice or cause. Furthermore, Defendant failed to amicably address Plaintiff's concerns on multiple occasions and refused to provide him the contracted-for rewards terms.

56. As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff is entitled to actual damages, restitution, and/or punitive damages.

## COUNT IV

### UNJUST ENRICHMENT

57. Plaintiff incorporates paragraphs 1-39 of this Complaint as though fully stated herein.

58. Plaintiff alleges unjust enrichment in the alternative to both the Massachusetts Consumer Protection Act and breach of contract. Additionally, Plaintiff alleges unjust enrichment on behalf of a national class.

59. The elements of unjust enrichment include "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."[15]

60. Here, Plaintiff (1) acquired and made purchases using Defendant's credit card under false pretenses; (2) Defendant advertised and thus knew of consumers' incentive to use this card based on its Bonus Miles and XP offer; and (3) Defendant refused to apply the correct offer or refund Plaintiff for the estimated value of the lost rewards.

---

[12] *Robert and Ardis James Foundation v. Meyers*, 474 Mass. 181, 188 (2016)
[13] *Chokel v. Genzyme Corp.*, 449 Mass. 272, 276 (2007)
[14] *Weiler v. PortfolioScope, Inc.*, 469 Mass. 75, 82 (2014) (quoting *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 570 (2010))
[15] *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).

61. As a result of Defendant's unjust enrichment, Plaintiff is entitled to restitution of the difference in value between the originally contracted rewards program and the one Defendant subsequently applied.

## CLASS ACTION ALLEGATIONS

62. Plaintiff and members of the Class have all suffered injury in fact as a result of Defendant's unlawful and deceptive conduct.

63. The "Class Period" means four years prior to the filing of the Complaint in this action.

64. Plaintiff brings this lawsuit individually and on behalf of other consumers similarly situated under Fed. R. Civ. P. 23. Subject to additional information obtained through further investigation and/or discovery, the proposed "Class" consists of:

> All consumers who applied for a Mastercard with an offer to earn 70,000 bonus miles + 40 XP after making $3,000 or more in purchases within the first 90 days of opening their account, and were not provided those rewards.

65. Additionally, Plaintiff proposes the following Massachusetts "Sub-class" under the Massachusetts Consumer Protection Act:

> All Massachusetts residents who applied for a Mastercard with an offer to earn 70,000 bonus miles + 40 XP after making $3,000 or more in purchases within the first 90 days of opening their account, and were not provided those rewards.

66. Excluded from the Class and Sub-class are Defendant and any of Defendant's officers, directors, and employees. Plaintiff reserves the right to modify or amend the Class definition before the Court determines whether certification is appropriate.

67. *Ascertainability.* The members of the Class are readily ascertainable from Defendant's records as well as through public notice.

68. *Numerosity.* The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class consists of thousands of members.

69. *Existence and Predominance of Common Questions of Law and Fact.* Common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual Class members. All members of the Class have been subject to the same conduct and their claims are based on the standardized marketing, advertisements, and promotions of Defendant. The common legal and factual questions include, but are not limited to, the

following:

- Whether Defendant's refusal to apply the original promotional offer constitutes an unfair or deceptive act or practice;

- Whether Defendant acted intentionally in its refusal to apply the original promotional offer;

- Whether Defendant did not act in good faith in its refusal to apply the original promotional offer;

- Whether Defendant, through its conduct, received money that, in equity and good conscience, belongs to Plaintiff and members of the Class;

- Whether Plaintiff and proposed members of the Class are entitled to equitable relief, including but not limited to restitution and/or disgorgement; and

- Whether Plaintiff and proposed members of the Class are entitled to injunctive relief sought herein

70. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff, like members of the proposed Class, spent time using Defendant's credit card and purchased products under the assumption that Defendant would apply its advertised limited time offer. Plaintiff is advancing the same claims and legal theories individually and on behalf of all absent members of the Class. Defendant has no defenses unique to Plaintiff.

71. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in consumer protection law, including class actions. Plaintiff has no adverse or antagonistic interest to those in the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

72. **Superiority.** Class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system. The damages or other financial detriment suffered by individual Class members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the

claims against Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be impractical for members of the proposed Class to individually redress the wrongs to them. Even if the members of the proposed Class could afford such litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Therefore, a class action is maintainable and superior pursuant to Fed. R. Civ. P. 23.

73. Unless the Class is certified, Defendant will retain monies received as a result of Defendant's unlawful and deceptive conduct alleged herein. Unless a class-wide injunction is issued, Defendant will continue to add hidden surcharges to consumers' bills, and members of the public will continue to be misled, while members of the Class will continue to be harmed, and denied their rights.

74. Further, Defendant has acted or refused to act on grounds that are generally applicable to the class, so that declaratory and injunctive relief is appropriate to the Class as a whole, making certification appropriate pursuant to Fed. R. Civ. P. 23.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

- An award of actual damages pursuant to M.G.L. c. 93A, § 9(3).

- An award of treble damages pursuant to M.G.L. c. 93A, § 9(3).

- Injunctive relief pursuant to pursuant to M.G.L. c. 93A, § 9(3).

- Reasonable attorneys' fees and costs pursuant to M.G.L. c. 93A, § 9(4)

- Actual damages based on breach of contract and the implied covenant of good faith and fair dealing.

- Restitution based on breach of contract and the implied covenant of good faith and fair dealing.

- Punitive damages based on breach of the implied covenant of good faith and fair dealing.

- Disgorgement based on unjust enrichment

COMPLAINT

- Any and all other relief the Court deems just and proper.

## **TRIAL BY JURY**

75. Plaintiff is entitled to, and demand, a trial by jury on all issues so triable.


Dated: January 17, 2025                    Respectfully submitted,

                                                           **SHIELD LAW, LLC**




                                                           By: */s/ Nicola Yousif*
                                                           Nicola S. Yousif
                                                           MA No. 679545
                                                           Shield Law, LLC
                                                           157 Belmont Street,
                                                           Brockton, MA 02301
                                                           T: (508) 588-7300
                                                           E: nick@shieldlaw.com